IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE ZAGEL

GORDON JOHNSON,

    Plaintiff,

v.

HULL HOUSE ASSOCIATION, an Illinois
not-for-profit corporation, BOARD OF
TRUSTEES OF HULL HOUSE
ASSOCIATION and CLARENCE N.
WOOD, in his capacity as President and
Chief Executive Officer and individually,

    Defendants.

**01C 1755**

)
)
)
)
) No.
)
) MAGISTRATE JUDGE LEVIN
)
)
)
)
)
)
)
)

**DOCKETED**

MAR 15 2001

FILED-ED4
01 MAR 13 AM 10: 09
CLERK
U.S. DISTRICT COURT

## NOTICE OF REMOVAL

Defendants HULL HOUSE ASSOCIATION, BOARD OF TRUSTEES OF HULL HOUSE

ASSOCIATION and CLARENCE N. WOOD (collectively referred to as the "Defendants"), by their

its attorneys and pursuant to 28 U.S.C. §§ 1441(a) and 1446, hereby remove this action from the

Circuit Court of Cook County, Chancery Division (the "State Court") to the United States District

Court for the Northern District of Illinois. This action may be removed because this Court has

original jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132. The claims asserted relate to an

employee benefit plan and are completely preempted by the Employee Retirement Income Security

Act of 1974, as amended ("ERISA"). In support of removal, Defendants state as follows:

  1.  On March 12, 2001, the Defendants was served with Plaintiff's Complaint. A copy

of the Complaint is attached as Exhibit 1. Defendants' Notice of Removal is timely filed pursuant

to 28 U.S.C. §1446 as it is within 30 days of the date on which Defendants received the Complaint.

2.  The Complaint asserts five (5) state law claims: Count I (Mandamus); Count II (Specific Performance); Count III (Tortious Interference with Contract); Count IV (Declaratory Relief) and Count V (Injunctive Relief).

3.  The relief sought for each of these claims, *inter alia*, is an order "enforcing" Plaintiff's alleged right to retirement benefits due under an employee benefit plan known as the Supplemental Pension Contract ("SPC").

4.  The SPC is an "employee benefit plan" as defined in Section 3(3) of ERISA, 29 U.S.C. § 1002(3).

5.  The state law claims asserted in the Complaint "relate to" an employee benefit plan and are within the scope of ERISA's civil enforcement provisions. Therefore, these claims are completely preempted by Sections 502 and 415(a) of ERISA, 29 U.S.C. §§ 1132 and 1144(a). Accordingly, this Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132.

Respectfully submitted,

HULL HOUSE ASSOCIATION,
BOARD OF TRUSTEES OF HULL HOUSE
ASSOCIATION and CLARENCE N. WOOD

By: _____
     One of Their Attorneys

Richard H. Schnadig
Thomas R. Dee
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Dated: March 12, 2001

VPCHI01/#735497.1 3/12/01

# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

GORDON JOHNSON,                                )
          Plaintiff,                         )
       vs.                                     )
                                     )
HULL HOUSE ASSOCIATION, an Illinois            )
not-for-profit corporation, BOARD OF           )
TRUSTEES OF HULL HOUSE                          )
ASSOCIATION and CLARENCE N. WOOD,              )
in his capacity as President and Chief Executive )
Officer and individually,                       )
                                     )
          Defendants.                        )

2001 MAR 12 PM 12: 10
CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
CHANCERY DIV.
CLERK
DOROTHY BROWN
No.
01CH04217

## VERIFIED COMPLAINT FOR
## DECLARATORY, INJUNCTIVE AND OTHER RELIEF

NOW COMES GORDON JOHNSON, Plaintiff herein, and complaining of the BOARD OF TRUSTEES OF HULL HOUSE ASSOCIATION, HULL HOUSE ASSOCIATION, an Illinois not-for-profit corporation, and CLARENCE N. WOOD, in his capacity as President and Chief Executive Officer and individually, Defendants herein, and states as follows:

### PARTIES

1.    Hull House Association ("Hull House) is an Illinois not-for-profit corporation that engages in the business of providing social services. Hull House's principal offices are located at 10 South Riverside Plaza, Chicago, Cook County, Illinois.

2.    The Board of Trustees ("the Board") is an administrative body which exists by virtue of Illinois law, its Articles of Incorporation and the By-Laws of the Hull House Association. The Board functions as a corporate Board of Directors and is charged with exercising its business judgment in making decisions on behalf of Hull House.

3.    Clarence N. Wood ("Wood") is an individual who resides in Cook County, Illinois. Since

1

August 1, 2000, Wood is and has been Hull House's President and Chief Executive Officer. Wood is sued in his capacity as President and Chief Executive Officer of Hull House and individually.

4.      Gordon Johnson ("Johnson") is an individual with a residence in Des Plaines, Illinois. Johnson was Hull House's President and Chief Executive Officer from 1990 until July 31, 2000. Johnson has had a long career in child welfare administration which spans more than forty-five years.

## Background

5.      Johnson retired from Hull House on July 31, 2000. Johnson is currently 68-years-old. At retirement, Johnson was eligible for a standard pension from Hull House.

6.      When he assumed his position as President and Chief Executive Officer, Hull House had an annual budget in the amount of $9 million dollars and was an agency on the brink of bankruptcy. Through his efforts, Johnson brought the budget from $9 million to $ 44 million dollars and to national and international prominence. During his tenure, Johnson established many new programs such as "New Directions", an independent living program for wards of the State of Illinois highlighted in Time Magazine and obtained a $10 million contract for Hull House to operate the "New Directions" program. Johnson also established "Jane's House" which serves incarcerated women who are completing their sentences and need assistance in returning to the civilian population, and obtained a contract in the amount of approximately $2 million dollars to establish Jane's House. Johnson was responsible for establishing the Neighbor to Neighbor foster care program for Hull House. Under Johnson, Hull House became a Child Welfare League agency and became accredited by the Council on Accreditation. Johnson also received excellent to superior performance ratings from the Board. Upon his retirement, Johnson received a resolution from the

2

City Council of the City of Chicago commending his years of service to Hull House Association.[1]

7.     When he retired on July 31, 2000, Johnson was eligible for a supplemental pension that was 70% vested. Had Johnson remained employed with Hull House until he reached age 70, he would have been 100% vested in the supplemental pension benefits.

<u>Executive Committee's Recommendations</u>

8.     Hull House's Board has an Executive Committee which investigates matters and makes recommendations to the Board.

9.     Concerning Johnson's supplemental pension benefits, the Executive Committee of the Board investigated the matter and recommended that the Board take the following acts: (1) authorize payment of a supplemental annuity amount; authorize payment at the fully vested level in return for an agreement from Gordon that for a period of three years he will not compete with Hull House, he will not solicit employees from Hull House, he will support Hull House both publicly and privately in an affirmative way through his actions and words, and he will provide up to 400 hours a year in consulting services as requested by the new CEO (or chairman of the board in the absence of a new CEO) with the concurrence of the board; provide that the penalty for failure to keep the agreement, as determined solely by the board, is reversion to the partially vested level; (4) allow Gordon to change the form of the retirement if he desires to a joint and survivor annuity and/or an annuity payable immediately, all with appropriate actuarial adjustments as recommended by our consultants, so that the present value of the selected annuity is equivalent to the present value of the authorized annuity.[2]

---

[1]Resolution of the City of Chicago dated August 30, 2000 attached as **Exhibit No. 1.**

[2]Recommendations of the Executive Committee on Gordon Johnson's Supplemental Pension attached as **Exhibit No. 2.**

3

## The 2000 Supplemental Pension Contract

10.    The Board considered the recommendation of the Executive Committee and subject to certain conditions, approved Johnson's receipt of the supplemental pension vested at 100% even though he had not reached age 70.[3]

11.    On August 1, 2000, Hull House entered into a contract with Johnson styled the Supplemental Pension Contract ("the 2000 Supplemental Pension Contract"). Among the recitals incorporated into the 2000 Supplemental Pension Contract is a recital that Johnson agreed to certain conditions proposed by the Board and had selected to begin receiving the supplemental pension and 50% survivor benefits immediately.

12.    Under Paragraph Four of the 2000 Supplemental Pension Contract, Johnson elected to receive his supplemental pension in the form of an annuity, and Hull House became obligated to purchase, an annuity for Johnson with annual SERP joint and 50% survivor annuity benefits of $73,467.40.

13.    Pursuant to Paragraph Five of the 2000 Supplemental Pension Contract, in order to receive the supplemental pension vested at 100%, Johnson undertook post-employment obligations to Hull House.

14.    Paragraph Five of the 2000 Supplemental Pension Contract provides, among other things, that in consideration for the increased pension benefits, Johnson agreed not to compete with Hull House, nor solicit Hull House's employees until February 17, 2003.

15.    Paragraph Six of the 2000 Supplemental Pension Contract provides that until February17, 2003, the Board is vested only with the discretion to reduce Johnson's supplemental pension benefits

---

[3]2000 Supplemental Pension Contract attached as **Exhibit No. 3.**

if he violates any of the conditions in Paragraph Five of the 2000 Supplemental Pension Contract.

16.     Illinois law implies a duty of good faith and fair dealing into the Board's exercise of its discretionary decision-making as set forth in Paragraph Six, and the Board may not declare a violation in bad faith solely to reduce the amount of payments made to Johnson.

17.     Since August 1, 2000, Johnson has inquired of various of Hull House's agents as to when the annuity will be purchased, but has gotten no response other than they are "working on it".

18.     On information and belief, employees of Hull House have obtained quotes for the purchase of the annuity for Johnson, but the Board has not authorized Hull House to purchase the annuity.

19.     Hull House's payments made to date under the 2000 Supplemental Pension Contract have been made from its general revenue fund.

20.     Under the terms of the 2000 Supplemental Pension Contract, the Board's duty to authorize the purchase of the annuity is separate and apart from its duty to authorize payment of supplemental pension payments to Johnson.

21.     Under the 2000 Supplemental Pension Contract, Hull House's duty to purchase the annuity is separate and apart from its duty to pay Johnson supplemental pension payments.

## Hull House

22.     While President and Chief Executive Officer of Hull House, Johnson established a national foster care training program for child welfare administrators. Through Johnson's efforts, Hull House applied for and received funding from the federal government to fund this national foster care training program. Congress awarded Hull House an appropriation for a period of 18 months commencing in September, 2000 through March, 2002 in the amount of Four Hundred Ninety Six Thousand Dollars ($496,000.00).

5

23.    Thereafter, if it desires further funding, Hull House will need to make application for a further appropriation from Congress for continuation of its national training program.

24.    Until March, 2000, Hull House operated a foster care program, in part, in Florida. In March, 2000, the Board passed a resolution, effective August 1, 2000, terminating Hull House's involvement in the Florida program.[4]

<u>Neighbor To Family</u>

25.    While President and CEO of Hull House, Johnson prepared a written report for Board meetings. Prior to his departure from Hull House, in Johnson's last report to the Board, he advised the Board of his formation of a 501(c)(3) corporation and the establishment of the "Neighbor to Family" foster care program in Florida. The last (written) report states: *"I have created a 501-c(3) non-profit entity for this national intent of training and public awareness and hopefully call upon Hull House to assist with technical assistance from Neighbor to Neighbor program. The new entity is Neighbor to Family"*. When Johnson presented this written report to the Board, he also orally read it to the Board. At the conclusion, the Board indicated that it accepted Johnson's Report.[5]

26.    Johnson currently administers foster care contracts with the State of Florida.

27.    In approximately January, 2001, Congress appropriated $230,000.00 for Neighbor to Family for a foster care training program.

28.    In approximately February, 2001, a staffer on the Appropriations Sub-Committee in Washington, D.C. reached Wood by telephone and advised that the staffer was trying to reach Johnson regarding the Congressional appropriation for the Neighbor to Family program in Florida.

---

[4]See Board Resolution attached as **Exhibit No. 4.**

[5]See Johnson's Final Report attached as **Exhibit No. 5.**

6

29.     Wood claimed that he did not know how to reach Johnson and that Johnson had not left a forwarding address.  Wood demanded that the staffer explain why Congress did not make this appropriation to Hull House instead of to the Neighbor to Family program in Florida.

### Wood's 2/21/01 Letter

30.     On February 21, 2001, Wood sent Johnson a letter falsely stating that "the Board of Trustees has elected to reduce all future supplemental benefits from 100% vested to 70% vested" due to the fact of the Congressional appropriation to the Neighbor to Family program in Florida.  In fact, the Board has not made such an election.

31.     Wood's 2/21/01 letter also falsely states that the Board has determined that the Congressional appropriation to Neighbor To Family violates the non-competition provision of the 2000 Supplemental Pension Contract.[6]  In fact, the Board has not made such a determination.

32.     Wood has since directed agents of Hull House to make no further supplemental pension payments whatsoever to Johnson.

33.     On approximately March 2, 2001, Johnson telephoned Wood and advised Wood that he (Johnson) was aware that Wood had ordered that no payments would be made to Johnson, that Johnson had not done anything to violate the contract and desired a meeting with Wood and wanted his supplemental pension payments.  Wood advised Johnson that he could not meet with Johnson immediately as he was out of town all week and that Wood would "see what he could do" about Johnson's payment. On information and belief, Wood was not out of town all week, and has not pursued a meeting with Johnson, nor has Wood countered his direction which ceased all supplemental pension payments to Johnson.

---

[6]See letter dated 2/21/2001 attached as **Exhibit No. 6.**

34.     On March 2, 2001, Johnson's attorney sent a letter to Wood's attorney advising that the contract requires a Board decision in order to even reduce payments under the 2000 Supplemental Pension Contract.[7]

35.     Hull House makes payments under the 2000 Supplemental Pension Contract by direct deposit into Johnson's bank account. On March 6, 2001, a payment was due to Johnson under the terms of the 2000 Supplemental Pension Contract.

36.     On March 6, 2001, Hull House made no payment to Johnson at all. At Wood's direction, Hull House will make no further payments under the 2000 Supplemental Pension Contract.

37.     Johnson is dependent on the payments due under the 2000 Supplemental Pension Contract in order to meet living expenses and to pay his debts.

38.     On March 8, 2001, Johnson's counsel telefaxed a letter to Wood's counsel advising that Johnson has received no payment by virtue of Wood's action, and Johnson plans to file suit.[8] No response has been received.

## COUNT ONE (Mandamus)

1-38.   Paragraphs One through Thirty-Eight are hereby incorporated and realleged as though fully set forth herein.

39.     Under the terms of the 2000 Supplemental Pension Contract, the Board has a non-discretionary legal duty to authorize the purchase of an annuity for Johnson.

40.     Through its general counsel, Johnson has made demand on Hull House as to when the annuity contract will be purchased, but the Board has not authorized the purchase of an annuity and

---

[7] See letter dated 3/2/01 attached as **Exhibit No. 7.**

[8] See letter dated 3/8/01 attached as **Exhibit No. 8.**

Hull House has not purchased the annuity contract.

41.     The Board has authority to comply with an order of mandamus directing it to authorize the purchase of an annuity for Johnson under the terms of the 2000 Supplemental Pension Contract.

WHEREFORE, Johnson requests that this Court enter an order of mandamus directing the Board of Trustees of Hull House Association to authorize the purchase of the annuity contract for Johnson, and directing Hull House to purchase the annuity contract for Johnson, for costs associated with this action and for such other and further relief as may be equitable and just.

## COUNT TWO (Specific Performance)

1-41.   Paragraphs One through Forty-One are hereby incorporated and realleged as though fully set forth herein.

42.     The Board continues to refuse to authorize, and Hull House continues to fail and refuse to purchase the annuity contract for Johnson required under the terms of the 2000 Supplemental Pension Contract.

43.     Johnson has complied with all conditions of the contract.

44.     Johnson is entitled to an order of specific performance requiring the Board to authorize and Hull House to immediately purchase the annuity contract for Johnson.

WHEREFORE, Johnson requests that this Court enter an order of specific performance directing Hull House to purchase the annuity contract for Johnson, for costs associated with this action and for such other and further relief as may be equitable and just.

## COUNT THREE (Tortious Interference With Contract)

1-44.   Paragraphs One through Forty-Four are hereby incorporated and realleged as though fully set forth herein.

45.     Wood has intentionally and unjustifiedly induced Hull House to breach the contract by in that:

(A) Under the terms of the 2000 Supplemental Pension Contract, Johnson's supplemental pension payments can only be reduced in the event that the entire Board makes a determination that Johnson has breached the non-competition clause contained in Paragraph Five of the 2000 Supplemental Pension Contract.

(B)     Wood's knows that the Board has made no such determination, but his letter falsely states that the Board has determined that Johnson violated the non-competition clause, when, in fact, the matter has not been brought to a vote, and the Board has not made such a finding, nor voted to reduce Johnson's supplemental pension payments.

(C)     Wood knows or should know that the Neighbor To Family has no national training program, has never trained a single person, and the Congressional appropriation of funding to the Neighbor to Family program in Florida for FY 2002 does not constitute "competition", particularly since, without objection, the Board was advised of Johnson's intention to establish Neighbor To Family in Florida with a training component prior to execution of the 2000 Supplemental Pension Contract.

46.     Wood's actions in directing Hull House to cease entirely paying any and all supplemental pension payments to Johnson under the 2000 Supplemental Pension Contract are unjustified and malicious, and are not taken for any lawful purpose, but are instead designed solely to harm Johnson, personally and professionally.

47.     By virtue of Wood's actions, Hull House has breached the 2000 Supplemental Pension Contract with Johnson.

48.     Wood's actions are antagonistic to the interests of Hull House and utterly lacking in any

10

justification because Wood's order that no further payments whatsoever be made to Johnson under the 2000 Supplemental Pension Contract subjects Hull House to monetary liability as well as damage to its reputation for breach of the 2000 Supplemental Pension Contract.

49.     As the result of Wood's acts, Johnson has suffered damage in the loss of his supplemental pension benefits and inability to meet living expenses and has suffered damage to his reputation.

50.     Additionally, for the same claimed "misconduct", Wood has also directed that a separate contract Johnson has with Hull House for consulting services be canceled and Johnson has thereby been damaged in the loss of his expectations under the separate contract.

51.     Wood's direction that Hull House to cease all supplemental pension payments to Johnson are calculated and deliberate, willful and wanton, in that: (a) Wood knows that his 2/21/01 letter falsely claims that the Board made a finding and elected to reduce Johnson's supplemental pension payments, when it did not do so; (b) Wood knows that his allegations stating that Johnson violated the non-competition provision are untrue, and (c) by reading the 2000 Supplemental Pension Contract, Wood knows or should know that the Board's only authority is to reduce supplemental pension from 100% to 70% and that his actions in ceasing all payments are unlawful. Despite this, Wood hopes to gain credibility for himself by destroying Johnson personally and professionally and knows that Johnson will suffer extreme financial hardship and will have to incur the cost, inconvenience and stress of a lawsuit in order to react to Wood's illegal conduct.

WHEREFORE, Johnson requests that judgment be entered in his favor and against Wood, individually, in an amount in excess of $50,000.00, for damages, punitive damages, interest as may be provided by law, for costs, and grant such other and further relief as may be equitable and just.

## COUNT FOUR (Declaratory Relief)

1-51.    Paragraphs One through Fifty-One are hereby incorporated and realleged as though fully set forth herein.

52.      Under the terms of the 2000 Supplemental Pension Contract, Johnson is obligated not to "compete" with Hull House until February 17, 2003.

53.      Although the term "compete" is not defined under the 2000 Supplemental Pension Contract, Illinois law requires that it be interpreted according to its ordinary meaning.

54.      A duty of good faith and fair dealing must be implied into the discretionary decision-making authority granted to the Board under Paragraph Six of the 2000 Supplemental Pension Contract insofar as Illinois law does not permit the Board to declare a breach of a condition of Paragraph Five solely to avoid making payments in an amount consistent with 100% vesting.

55.      An actual controversy exists between the parties as to whether the fact of a Congressional appropriation to the "Neighbor To Family" program in Florida for a foster care training program for a future fiscal year constitutes "competition" in violation of the 2000 Supplemental Pension Contract.

56.      An actual controversy exists between the parties as to whether a decision by the Board reducing Johnson's supplemental pension benefits due to the Congressional appropriation would constitute a breach of the Board's implied duty of good faith and fair dealing under the 2000 Supplemental Pension Contract because Johnson's Last Report to the Board establishes that the Board knew of the Neighbor to Family program and of the intended training component, made no objection and entered into the 2000 Supplemental Pension Contract.

57.      In the event the Board determines that the Congressional appropriation constitutes a violation of the non-competition clause of the 2000 Supplemental Pension Contract and reduces his

12

supplemental pension benefits by 30%, Johnson is prepared to sue the Board for breach of the Board's implied duty of good faith and fair dealing, and a declaration by this Court would resolve that part of the controversy.

WHEREFORE, Johnson requests that this Court grant declaratory relief against the Board of Trustees of Hull House Association, Hull House Association and Clarence N. Wood, in his capacity as President and Chief Executive Officer, and declare that the fact of a Congressional appropriation to Neighbor to Family program in Florida does not constitute "competition" as that term is defined under Illinois law and as used in the 2000 Supplemental Pension Contract, and declare that a contrary decision by the Board of Trustees would constitute a violation of the implied duty of good faith and fair dealing, grant costs and grant such other and further relief as may be equitable and just.

## COUNT FIVE (Injunctive Relief)

1-57.   Paragraphs One through Fifty-Seven are hereby incorporated and realleged as though fully set forth herein.

58.   By virtue of the 2000 Supplemental Pension Contract, Johnson has a clearly ascertainable contractual right to receive supplemental pension payments from Hull House.

59.   By virtue of the 2000 Supplemental Pension Contract, Johnson has a clearly ascertainable contractual right to receive supplemental pension payments at a rate consistent with 100% vesting until *the Board* makes a determination that Johnson has violated one of the conditions and elects to reduce his supplemental pension to 70% vested.

60.   Under the 2000 Supplemental Pension Contract, Johnson has a clearly ascertainable right to require Hull House to purchase the annuity contract.

61.   Johnson uses his pension payments to meet living expenses.

13

62.     Johnson is currently receiving no supplemental pension payments and will be unable to meet living expenses as his bills come due and will incur interest and late charges on those bills he does not pay as well as suffer adverse effects on his credit history.

63.     Johnson has no adequate remedy at law and will suffer irreparable harm in the event Hull House continues to refuse to make supplemental pension payments to Johnson under the terms of the 2000 Supplemental Pension Contract.

64.     Hull House's refusal to purchase the annuity contract for Johnson has enabled Wood to perpetrate the damage he has inflicted on Johnson. The annuity contract will provide income to Johnson during his retirement. Johnson has no adequate remedy at law and will suffer irreparable harm in the event Hull House continues to refuse to purchase the annuity contract for Johnson.

WHEREFORE, Gordon Johnson requests entry of an order as follows:

1.     Finding that Wood's action in directing Hull House to cease entirely making any supplemental pension payments to Johnson under the terms of the 2000 Supplemental Pension Contract is unlawful; and

2.     Finding that Wood's claim (set forth in his 2/21/01 letter to Johnson) that "the Board of Trustees has elected to reduce all future supplemental benefits from 100% vested to 70% vested" is false; and

3.     Finding unlawful any direction by Wood to Hull House's agents and employees to reduce Johnson's compensation from 100% to 70%, absent a good faith determination by the Board that Johnson has violated one of the conditions in Paragraph Five of the 2000 Supplemental Pension Contract and an election by the Board to reduce Johnson's compensation; and

4.     Temporarily restraining and/or preliminarily and permanently enjoining Wood from directing Hull House to cease entirely making any supplemental pension payments to Johnson under

14

the 2000 Supplemental Pension Contract; and

5.     Temporarily restraining and/or preliminarily and permanently enjoining Wood from directing the reduction of Johnson's future supplemental pension benefits without presenting the matter to the Board for a determination of the facts made in the exercise of business judgment and a vote; and

6.     Preliminarily and permanently enjoining Hull House from refusing to make supplemental pension payments; and

7.     Preliminarily and permanently enjoining Hull House from reducing payments under the 2000 Supplemental Pension Contract until the Board makes a determination in compliance with the contract that Johnson has violated any of the condition and the Board elects to make a reduction; and

8.     Preliminarily and permanently enjoining the Board to authorize the purchase of the annuity for Johnson which is required under the 2000 Supplemental Pension Contract.

9.     Preliminarily and permanently enjoining Hull House to purchase the annuity contract for Johnson which is required under the 2000 Supplemental Pension Contract.

10.     Enter the foregoing temporary restraining order and/or preliminary injunction without the posting of bond; and

11.     Award costs and such other and further relief as may be equitable and just.

GORDON JOHNSON, Plaintiff herein

By: _____
One of His Attorneys

Cathy Ann Pilkington, Esq.
Law Office of Cathy Ann Pilkington
20 North Clark Street, Suite 1725
Chicago, IL 60602
(312) 346-2762   (No. 36356)

15

03/12/2021  00:25  904437  `0  Fax·15125770684  GORDON JOHNSON  Mar 11  22:37  P.17

PAGE  02

## VERIFICATION

I, Gordon Johnson, under the penalties as provided at Section 1-109 of the Code of Civil Procedure, certify I have read the attached Verified Complaint For Declaratory, Injunctive and Other Relief and that the statements set forth therein are true and correct, except as to those stated on information and belief which I verily believe to be true to the best of my knowledge, information and belief.

Gordon Johnson

Dated:  March 11, 2001

16

# A resolution

adopted by The City Council
of the City of Chicago, Illinois



Presented by ____Alderman Edward M. Burke____ on ___August 30, 2000___

**Whereas**, Gordon Johnson has officially retired as President and Chief Executive Officer of Hull House Association, following ten years of dedicated and tireless service; and

*WHEREAS*, The Chicago City Council has been informed of his retirement by Alderman Edward M. Burke; and

*WHEREAS*, Hull House Association is a nationally renowned not-for-profit organization founded in 1889 by Jane Addams, a social reformer and Chicago original whose mission was to help children and their families; and

*WHEREAS*, Throughout his esteemed tenure, Gordon Johnson has shared the strong passion for social services characterized by Hull House Founder Jane Addams who embodied the philosophy "neighbors helping neighbors"; and

*WHEREAS*, Gordon Johnson utilized his position to build successful programs and create new dynamic partnerships within Illinois and across the nation dedicated to improving the quality of life for children and families; and

*WHEREAS*, Gordon Johnson initiated model programs including Families For A Better Life, a family self-sufficiency program in collaboration with talk show host Oprah Winfrey; and

*WHEREAS*, Gordon Johnson also helped create New Directions, a program for independent living for teen-agers and Neighbor To Neighbor, a foster care program; and

EXHIBIT

tabbies

1

*WHEREAS*, Under the wisdom and guidance of Gordon Johnson, Hull House Association's four community centers and 30 satellite locations have thrived as an important and integral part of the City of Chicago, providing needed and critical social services to 200,000 people annually; now, therefore

*BE IT RESOLVED*, That we, the Mayor, and the members of the Chicago City Council assembled this thirtieth day of August, 2000, do hereby congratulate Gordon Johnson on his retirement as President and Chief Executive Officer of Hull House Association and do hereby extend our sincere and everlasting appreciation for his service; and

*BE IT FURTHER RESOLVED*, That a suitable copy of this resolution be presented to Gordon Johnson.

Mayor

City Clerk

EXHIBIT A

## Recommendations on Gordon Johnson's Supplemental Pension

1) Gordon Johnson is eligible for a standard pension, like other employees, although the amount is relatively small compared to his salary because of his limited length of service.

2) Gordon also is eligible to receive a supplemental pension that would begin to be paid when he reaches age 70.

3) The intent of the supplemental pension is to bring his total retirement annuity amount (standard plus supplemental) at age 70 to approximately 50% of his final average compensation.

4) The supplemental pension requires specific authorization by the board if Gordon retires before age 70.

5) Even if authorized by the board, the supplemental pension is only partially vested if Gordon retires before age 70.

6) Based on his current compensation and years of service, the partially vested supplemental annuity amount is approximately $35,000 per year beginning at age 70.

7) If it were fully vested, the supplemental annuity amount would be approximately $109,000 per year beginning at age 70.

8) The Executive Committee recommends that the Board take the following actions:

   a) Authorize payment of a supplemental annuity amount.

   b) Authorize payment at the fully vested level in return for an agreement from Gordon that for a period of three years he will not compete with Hull House, he will not solicit employees from Hull House, he will support Hull House both publicly and privately in an affirmative way through his actions and words, and he will provide up to 400 hours a year in consulting services as requested by the new CEO (or chairman of the board in the absence of a new CEO) with the concurrence of the board.

   c) Provide that the penalty for failure to keep this agreement, as determined solely by the board, is reversion to the partially vested level.

   d) Allow Gordon to change the form of the retirement annuity, if he desires, to a joint and survivor annuity and/or an annuity payable immediately, all with appropriate actuarial adjustments as recommended by our consultants, so that the present value of the selected annuity is equivalent to the present value of the authorized annuity.

9) Given Gordon's specific background, knowledge and contacts, it is recognized that our new CEO may wish to engage Gordon in a specific additional consulting contract for a limited period of time, depending on the needs and desires of the new CEO (or chairman of the board in the absence of a new CEO) and the concurrence of the board.

10) Authorize reimbursement of reasonable expenses incurred in conjunction with any requested consulting services if the expenses are approved in advance by the new CEO and/or the chairman of the board.

EXHIBIT

2

ORIGINAL

## Supplemental Pension Agreement

THIS AGREEMENT is entered into this 1st day of August , 2000, by and between Hull House Association and Gordon Johnson (collectively the "Parties").

WHEREAS, Gordon Johnson was the President/CEO of Hull House Association;

WHEREAS, Gordon Johnson has chosen to retire and his last day of employment with Hull House Association was July 31, 2000;

WHEREAS, Gordon Johnson is eligible for a standard pension, like other employees, and a supplemental pension that would be 100% vested if he remained employed with Hull House Association until he reached age 70;

WHEREAS, the supplemental pension requires specific authorization by the Board of Trustees if Gordon Johnson retires before age 70;

WHEREAS, the supplemental pension is 70% vested as of the date of Gordon Johnson's retirement.

WHEREAS, the Board of Trustees has considered the recommendation of the Executive Committee and approved that Gordon Johnson receive the supplemental pension vested at 100% even though he has not reached age 70, subject to certain conditions;

WHEREAS, Gordon Johnson has agreed to the certain conditions proposed by the Board of Trustees and selected to begin receiving the supplemental pension and 50% survivor benefits immediately.

THEREFORE, the Parties agree as follows:

1.   The recitals above are incorporated into this Agreement.

2.   The Board of Trustees approved the recommendations of the Executive Committee regarding the supplemental pension and the recommendations are attached hereto as Exhibit A.

3.   The Board of Trustees also received actuarial advice from William M. Mercer. The letter from William M. Mercer is attached hereto as Exhibit B.

4.   After reviewing the recommendations from the Board of Trustees and the letter from William M. Mercer, Gordon Johnson has elected to receive his supplemental pension in the form of a joint and survivor annuity and in manner described in proposal four of the William M. Mercer letter, specifying annual SERP joint and 50% survivor annuity benefits of $73,467.40.

EXHIBIT

tabbies

3

5.  Until February 17, 2003, Gordon Johnson also agrees that in consideration for the increased pension benefits he will not compete with Hull House, not solicit employees from Hull House, will support Hull House both publicly and privately through his actions and words, and provide up to 400 hours a year (prorated in the last year) of uncompensated consulting services as requested by the new President/CEO with the concurrence of the Board of Trustees.

6.  Until February 17, 2003, the Board of Trustees may reduce all future supplemental pension benefits for Gordon Johnson from 100% vested to 70% vested, if Gordon Johnson fails to abide by the conditions set forth in paragraph 5, as determined solely by the Board of Trustees. The Board of Trustees shall be required to send written notice to Gordon Johnson of its election to reduce the future supplemental pension benefit.

7.  Gordon Johnson is entitled to the reimbursement of reasonable expenses incurred in conjunction with any request for consulting services if such expenses are approved in advance by the President/CEO and/or the Chairman of the Board of Trustees.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

Hull House Association

By _____
    Louise K. Smith

_____
Gordon Johnson

EXHIBIT A

## Recommendations on Gordon Johnson's Supplemental Pension

1) Gordon Johnson is eligible for a standard pension, like other employees, although the amount is relatively small compared to his salary because of his limited length of service.

2) Gordon also is eligible to receive a supplemental pension that would begin to be paid when he reaches age 70.

3) The intent of the supplemental pension is to bring his total retirement annuity amount (standard plus supplemental) at age 70 to approximately 50% of his final average compensation.

4) The supplemental pension requires specific authorization by the board if Gordon retires before age 70.

5) Even if authorized by the board, the supplemental pension is only partially vested if Gordon retires before age 70.

6) Based on his current compensation and years of service, the partially vested supplemental annuity amount is approximately $85,000 per year beginning at age 70.

7) If it were fully vested, the supplemental annuity amount would be approximately $109,000 per year beginning at age 70.

8) The Executive Committee recommends that the Board take the following actions:

   a) Authorize payment of a supplemental annuity amount.

   b) Authorize payment at the fully vested level in return for an agreement from Gordon that for a period of three years he will not compete with Hull House, he will not solicit employees from Hull House, he will support Hull House both publicly and privately in an affirmative way through his actions and words, and he will provide up to 400 hours a year in consulting services as requested by the new CEO (or chairman of the board in the absence of a new CEO) with the concurrence of the board.

   c) Provide that the penalty for failure to keep this agreement, as determined solely by the board, is reversion to the partially vested level.

   d) Allow Gordon to change the form of the retirement annuity, if he desires, to a joint and survivor annuity and/or an annuity payable immediately, all with appropriate actuarial adjustments as recommended by our consultants, so that the present value of the selected annuity is equivalent to the present value of the authorized annuity.

9) Given Gordon's specific background, knowledge and contacts, it is recognized that our new CEO may wish to engage Gordon in a specific additional consulting contract for a limited period of time, depending on the needs and desires of the new CEO (or chairman of the board in the absence of a new CEO) and the concurrence of the board.

10) Authorize reimbursement of reasonable expenses incurred in conjunction with any requested consulting services if the expenses are approved in advance by the new CEO and/or the chairman of the board.

## PROPOSED RESOLUTION WITH RESPECT TO THE
## FLORIDA NEIGHBOR TO NEIGHBOR PROGRAM

The Florida Neighbor to Neighbor program is currently operated by the Florida Ounce of Prevention Fund, a non-profit organization, under a contract with the State of Florida. The Florida Ounce of Prevention Fund acts as a holding company and subcontracts the actual operation of the program to Jane Addams Hull House Association.

Hull House Association would like to terminate its direct responsibility for the actual operation of the program no later than July 1, 2000 for both financial and operational reasons. Therefore it is suggested that the following resolution be recommended to the Board of Hull House Association from the Executive Committee.

1. Hull House Association wishes to terminate its responsibility for operations of the Florida Neighbor to Neighbor program no later than July 1, 2000.

2. Hull House Association has authorized Gordon Johnson, its president, to negotiate an orderly transition of operating responsibilities to another appropriate organization as quickly as possible, but in no case later than July 1, 2000.

3. Hull House Association is willing to provide technical assistance, primarily in the form of training, to the successor organization with respect to the current scope of operations. Such technical assistance would be provided on a paid contractual basis. Hull House Association is also willing to consider extensions to that scope of operation, both inside and outside Florida, on a case-by-case basis.

4. If another appropriate organization cannot be found by July 1, Hull House Association will end all involvement with the program in an orderly but efficient way.

Approved by the Hull House Association Executive Committee this 17th day of February, 2000.

EXHIBIT
4



JANE ADDAMS

# Hull House

**ASSOCIATION**

■ *Neighbors helping* ■
*Neighbors*

GORDON JOHNSON
PRESIDENT

# My Last Report
## To
## The Hull House Association
## Board of Trustees

### June 29, 2000

The tenure of Gordon Johnson as your President and CEO is coming to a close. Our years of success out weigh our failures because we have learned from our failures. I am viewed by you as the one who brought Hull House up from the ashes to a nationally recognized organization. However, I cannot be viewed alone --- for it is the people, the staff, who must be included in this eventful ten (10) year journey. They know the value of quality, the meaning of what *"making a difference"* means for the thousands of lives they touch and change. <u>Giving up is not part</u> of Hull House's nature or tradition.

Louise Smith has committed herself to connect or reconnect you to what we are all about – Neighbors Helping Neighbors Community Service. An appreciation of what Hull House means to our communities and people cannot be <u>assessed</u>, measured or even communicated to if you do not see the programs in operation first hand.

My ten (10) years with Hull House was enjoyable for me. I know that sometimes my forthrightness has been unsettling for some, but we always come to an understanding of what is best for Hull House. Our growth and size has been an advantage – particularly in view of the city, state and federal organizations; and of course, we are serving more Chicagoans.

My perspective is that in many ways Jane Addams and her staff's phenomenal growth was demonstrated by one mansion to thirteen buildings. Our nine (9) million dollar to forty-four (44) million dollar growth parallels Jane's years. I am sure her board members had growth concerns.



10 SOUTH
RIVERSIDE
PLAZA
CHICAGO, IL
60606

PHONE: 312.906.8600 ■ FAX: 312.906.8822

A participant in the United Way/Crusade of Mercy

**EXHIBIT**
tabbies®
**5**

-2-

All good things come to an end. Our years together have added new and different programs – unique programs, niche programs - nationally accredited and recognized. We also reconnected with settlement leader Tonybee Hall.

Our clear bright flaming torch is about to be passed on and over to new hands. It will be those hands that will have the responsibility to keep the flame bright and fueled, and if not, the flame will flicker and go out. This transition should be viewed as an opportunity to brighten the flame. For it is this flame that our constituents see and feel - showing the way for a better life.

Even though I'm an "old soldier" I do not intend to fade away. My passion is to see sibling foster care like Neighbor to Neighbor implemented in every state – revolutionizing our troubled foster care system. I have created a 501-(c) 3 non-profit entity for this national intent of training and public awareness and hopefully call upon Hull House to assist with technical assistance from the Neighbor to Neighbor program. The new entity is <u>Neighbor to Family</u>.

Me and my family thank you for giving me the opportunity to be your President and CEO – to hire and promote excellent staff – to enhance some existing programs, to initiate new programs, to help find and select new good board members and last but not least to befriend, to fish, to dine, visit, attend functions and to be with each and every one of you.

Thank you!



**JANE ADDAMS**

# Hull House

**A S S O C I A T I O N**

■ *Neighbors helping* ■
*Neighbors*

*Xord 2/ 22/ 2001*

February 21, 2001

Gordon Johnson
1900 Berry Lane
Des Plaines, IL 60018

Dear Mr. Johnson:

Recently, information has been received that leads the Board and me to believe that you have violated the terms of the Supplemental Pension Agreement you executed with Hull House Association dated August 1, 2000. Specifically, those terms set forth in paragraph 5 of the Agreement where in consideration of the increased pension benefits, you agreed to the following: that you **"will not compete with Hull House, not solicit employees from Hull House, will support Hull House both publicly and privately through his (sic) actions and words, and provide up to 400 hours a year (prorated in the last year) of uncompensated consulting services as requested by the new President/CEO with the concurrence of the Board of Trustees."**

Based upon communications with officials of the U.S. Department of Health and Human Services, it appears that you have elected to compete with HHA for funding for our Neighbor to Neighbor National Foster Care Training Program. Further we understand you plan to provide, or are in the process of providing, states and other private organizations with training and implementation of the Neighbor to Neighbor foster care model. Both activities are in direct conflict with HHA's plans and interests to promote and implement the model nationwide.

Thus, in accordance with paragraph 6 of the Supplemental Pension Agreement, the Board of Trustees has elected to **"reduce all future supplemental benefits ... from 100% vested to 70% vested"**. The reduction will be implemented prior to the next scheduled supplemental benefit payment.

Moreover, this letter shall, in accordance with paragraph 10 of the Nation Wide Foster Care Training Independent Contractor Agreement, executed on July 31, 2000, act as official notice of termination of your relationship with the Neighbor to Neighbor National Training Program. Therefore, any contact, communications, discussions and/or services being rendered on behalf of Hull House Association shall cease upon receipt of this letter. Work performed through today's date will be paid only upon receipt of invoices and written reports detailing all current and past work.

Finally, the documents formally separating Neighbor to Family from Hull House need to be finalized immediately. Additionally, the Neighbor to Family account continues to be more than four months past due in the amount of $54,000. Please remit the total amount owed, and make the necessary arrangements to exchange checks for the Levy County funds, within the next 10 days.

I regret that we have to take these actions. It was my hope that we could continue partnering with you in the National Training Program and many other endeavors. However, you have left me and the Board of Trustees no other choice, but to act with haste to protect the agency and its integrity.

Sincerely,

Clarence N. Wood
President/CEO

```
10 SOUTH

RIVERSIDE

PLAZA

CHICAGO, IL

60606
```

**EXHIBIT**

tabbies®

**6**

P H O N E :  3 1 2 . 9 0 6 . 8 6 0 0  ■  F A X :  3 1 2 . 9 0 6 . 8 8 2 2  ■  F O U N D E D  1 8 8 9

ACCREDITED

A participant in the United Way/ Crusade of Mercy

LAW OFFICES OF
# CATHY ANN PILKINGTON
20 NORTH CLARK STREET, SUITE 1725
CHICAGO, ILLINOIS 60602
TELEPHONE (312) 346-2762
TELEFAX (312) 372-6067

BY TELEFAX DELIVERY   (312) 609-5005

March 2, 2001

Vedder, Price, Kaufman
&amp; Kammholz
222 North LaSalle Street, Suite 2600
Chicago, IL 60601

Attn: Richard Schnadig, Esq.

RE: Johnson v. Hull House
Our File No. 12230

Dear Dick:

This will confirm our telephone conversation this morning regarding our respective clients and the communication my client received from Clarence Wood regarding, among other things, the supplemental pension agreement. I advised you that my review of the contract indicates that aside from the question whether a breach has occurred, any reduction of compensation due must result from a decision by the entire Board based on informed business judgment. Absent such a decision by the entire Board, the supplemental pension agreement does not permit Hull House to make any reduction in payments due.

Also, I explained to you that Gordon Johnson has nothing but the most passionate regard for Hull House and would not do anything to hurt or disadvantage Hull House. Based on what I have learned about the facts, this is a monumental misunderstanding as to how the appropriations process works which can and should be worked out without litigation.

To that end, you and I have agreed to meet at my office on Tuesday, March 6, 2001 at 9AM. Also, Gordon has called Clarence, and we have agreed that our respective clients (Gordon Johnson and Clarence Wood) should meet by themselves and try to work this matter out.

Thank you for your efforts to work this out without assistance from the courts. Although we remain ready to proceed with litigation if necessary, I am confident that our efforts to work this out without the courts becoming involved will benefit all concerned.

Sincerely,

Cathy Ann Pilkington

EXHIBIT
7

LAW OFFICES OF

# CATHY ANN PILKINGTON

20 NORTH CLARK STREET, SUITE 1725
CHICAGO, ILLINOIS 60602
TELEPHONE (312) 346-2762
TELEFAX (312) 372-6067

## BY TELEFAX DELIVERY   (312) 609-5005

March 8, 2001

Vedder, Price, Kaufman
 & Kammholz
222 North LaSalle Street, Suite 2600
Chicago, IL 60601

Attn: Richard Schnadig, Esq.

RE: <u>Johnson v. Hull House</u>
Our File No. 12230

Dear Dick:

A direct deposit payment was due to Gordon on March 6, 2001 under the supplemental pension agreement. No payment was received. Our information is that this is due to Clarence Wood's direction that no further payments are to be made to Gordon under the supplemental pension agreement.

Payment must be received not later than close of business on Friday, March 9, 2001. If not, my client has instructed me to file suit next week.

Sincerely,

Cathy Ann Pilkington

cc: Gordon Johnson

**EXHIBIT**

8

JS 44
(Rev. 07/86)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
GORDON JOHNSON

## DEFENDANTS
HULL HOUSE ASSOCIATION, BOARD OF TRUSTEES OF HULL HOUSE ASSOCIATION and CLARENCE N. WOOD

JUDGE ZAGEL
01C 1755
MAGISTRATE JUDGE LEVIN

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Cathy Ann Pilkington, Esq.
20 North Clark Street, #1725
Chicago, Illinois  60602

ATTORNEYS (IF KNOWN)
Richard H. Schnadig
Thomas R. Dee
Vedder, Price, Kaufman & Kammholz
222 N. LaSalle Street
Chicago, Illinois  60601

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Plaintiff asserts breach of contract claim preempted by the Employee Retirement Income Security Act, 29 U.S.C. Section 1132.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury—Med Malpractice | ☐ 620 Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)
☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $ Not Disclosed
Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

## VIII. REMARKS
In response to ☒ is not a refiling of a previously dismissed action
General Rule 2.21D(2) this case ☐ is a refiling of case number _____ of Judge _____

DATE 3/13/2001
SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

*JUDGE ZAGEL*

In the Matter of

GORDON JOHNSON V. HULL HOUSE
ASSOCIATION, ET AL.



MAGISTRATE JUDGE LEVIN

01C 1755

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

HULL HOUSE ASSOCIATION, BOARD OF TRUSTEES OF HULL HOUSE ASSOCIATION and CLARENCE
N. WOOD

| (A) | |
|---|---|
| **SIGNATURE** | |
| **NAME** Richard H. Schnadig | |
| **FIRM** Vedder, Price, Kaufman & Kammholz | |
| **STREET ADDRESS** 222 North LaSalle Street | |
| **CITY/STATE/ZIP** Chicago, Illinois 60601 | |
| **TELEPHONE NUMBER** (312) 609-7500 | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 02495384 | |
| **MEMBER OF TRIAL BAR?** YES X NO ☐ | |
| **TRIAL ATTORNEY?** YES X NO ☐ | |

| (B) | |
|---|---|
| **SIGNATURE** | |
| **NAME** Thomas R. Dee | |
| **FIRM** Vedder, Price, Kaufman & Kammholz | |
| **STREET ADDRESS** 222 North LaSalle Street | |
| **CITY/STATE/ZIP** Chicago, Illinois 60601 | |
| **TELEPHONE NUMBER** (312) 609-7500 | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 06215954 | |
| **MEMBER OF TRIAL BAR?** YES X NO ☐ | |
| **TRIAL ATTORNEY?** YES X NO ☐ | |
| **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | |

DOCKETED

MAR 15 2001

| (C) | |
|---|---|
| **SIGNATURE** | |
| **NAME** | |
| **FIRM** | |
| **STREET ADDRESS** | |
| **CITY/STATE/ZIP** | |
| **TELEPHONE NUMBER** | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | |
| **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ | |
| **TRIAL ATTORNEY?** YES ☐ NO ☐ | |
| **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | |

| (D) | |
|---|---|
| **SIGNATURE** | |
| **NAME** | |
| **FIRM** | |
| **STREET ADDRESS** | |
| **CITY/STATE/ZIP** | |
| **TELEPHONE NUMBER** | |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | |
| **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ | |
| **TRIAL ATTORNEY?** YES ☐ NO ☐ | |
| **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | |